So much only of the opinion of this Court is given as relates to the foregoing questions.
*Harper, J.
The principal question is that made on part of the plaintiffs, respecting the liability of the defendant generally for interest on the amount of the estate in his hands. The former decree of this'Court established that the defendants might exempt themselves from liability to pay interest on the funds in their hands, by showing that they had kept them locked up without making interest, and that this was in consequence of an agreement or understanding with the testator that they might so retain them, and should not be responsible for interest. I had thought it sufficiently explained that parol testimony was not to be admitted to contradict, explain, or in any degree control the operation of *120 the will, but to rebut an equity attaching on the executors, not by any direction of the will, but by the course and practice of this Court, imposing on them an obligation to vest the funds so as to make interest for the legatees. If interest were made or charged, it must go as an accessary of the principal, and its disposition must be determined by the will alone. Chancellor Johnston, on the hearing of the case before him, received the parol testimony, and has reported his opinion of the effect of it — that “it shows clearly an understanding and agreement between the testator and the executors, that the latter were not to be charged with interest.” The Chancellor comes to the conclusion, however, that the words of the will alone are sufficient to excuse the executors from the making of interest. I do not think it necessary to enter upon a reexamination of this part of the case, as we concur with the Chancellor upon the effect of the testimony.
The Chancellor adds: “I think the weight of the testimony goes to establish more: that the executors were to be at liberty to make such profit as they could by the use or loan of the money;” and upon this it is argued, that the effect of the testimony is not to show that the executors were excused from making interest, but that they were to take it for themselves; for which purpose we have determined the testimony not to be admissible. But if the understanding was that they might use the fund without accounting for interest, it involves, a fortiori, that they might retain it unemployed in their hands without being so accountable. And if they did so retain it, from the belief that interest, if made, would be their own, this is a no less valid excuse.
The chief argument on the part of the plaintiffs is, that the burden of *1 'iOI Pro°f was 011 defendant, to show that he did retain the *fund J unemployed in his hands ; that such are the terms of the decree of this Court, and that he has failed to do this ; on the contrary, it appears that he did, in some instances, and for aught that appears, may have done so (with a trilling exception) on the whole estate. It may be remarked, that if the defendant did retain the money in his actual possession, this was a fact not strictly susceptible of proof. It would involve the proof of the negative — that at no 'time had he lent or otherwise disposed of the money. If he had lived near a Bank, it might be said that he could have made a deposit of the money, and this might have been proved. But this is not the ordinary course of dealing of persons living in the country at a distance from Banks. I should be at a loss for the authority on which I would say that the defendant was bound to deposit in Bank. In the various cases in which an executor has been held excused from making interest, on account of the exigencies of the estate requiring him to retain funds in his hands, (as to meet probable demands,) which I have lately had occasion to examine, proof was not required that the funds were deposited or actually retained. Upon its being shown that the exigencies did in fact exist, it seems to have been taken for granted on the part of the executor that he did retain the funds to meet those exigencies, and the burden was thrown on the other side, to show that the executor did make use of the funds himself, or otherwise dispose of them. Perhaps it would have been better that a stricter rule had been adopted, but I am not at liberty to make one. If the executor had not the funds ready when properly called upon for them, this might be evi *121 dence enough that he did use the funds himself; but in this ease, the defendant seems to hare been always ready when properly called upon. When the want of notice is relied upon as a defence, the defendant is required to deny it explicitly on oath, and then, as this is a negative not strictly susceptible of proof, the denial is held sufficient to throw on the other party the burden of proving the notice. So, by parity of reasoning, I should say that'the party alleging he has not made interest, should in like manner deny in his answer. If the answer be clear, consistent and explicit, with nothing to contradict or discredit it, then the burden of proof must rest on the plaintiff. I think the answer sufficiently clear and positive in the denial of having received interest beyond a certain specified amount, nor do I perceive any thing in the whole case to discredit the answer. To a certain extent *it is supported. The r^i 51 defendant is shown, in one instance, to have lent the money of the L estate without interest. One witness who states that he paid him interest, states also that he accepted it unwillingly, and did not receive the full amount of interest. The witness, John Strong, the brother of the exe-' cutors, and who maybe supposed to have had an opportunity of knowing, states that “ the executors generally had the money in hand.” Further propf than this it would be hardly practicable to make. But the effect of the testimony was rather for the determination of the Chancellor than for this Court. These views dispose of the plaintiff’s ground of appeal.
It is argued that the notes given for the property of the estate when sold, would bear interest from the expiration of the year’s credit; that we cannot suppose them paid at the moment of maturity, and if not, that the executors must in fact have received interest. The executors charged themselves with the amount of the sale bill, as of the time it became due, and this in conformity to the practice of this Court. If this practice be correct, then the legal presumption is, that such notes are paid at maturity, and it is for those who allege otherwise to furnish the proof. It would be difficult to imagine any other rule. Such proof seems to have been furnished to a certain extent in the instance of M’Clarkin, and the defendant is charged accordingly ; but in another instance, a large payment seems to have been made before it was due. If executors are subject to the disadvantages which may result from their being charged in this manner, they ought, on the other hand, to have the benefits which may result from it.
It was the fault of the plaintiff, Garten, that he did not receive his legacy when it became due. The defendant offered to pay him the principal, and to account on oath for all the interest he had actually made, and we have determined that this is all he was entitled to. He was offered more than has now been established in his favor, defendant offering to give up his commissions. But it was admitted in argument by the defendant’s counsel, that some time in 1838 or 1834, Garten, repenting his refusal, demanded the amount which had been deposited with the Commissioner in Equity, and that the defendant then refused to let him have it. Defendant then put himself in the wrong by detaining what he admitted to be due, and from that time we think he must pay interest. *The precise date of this demand was not fixed, but it may be .-¡¡., ascertained by the Commissioner. *-
Decree accordingly.
Johnson, J., and O’Neai,!,, J., concurred.